IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

```
EDNA MOORE,                     )
                                )
     Plaintiff,                 )
                                )
vs.                             )   No. 2:07-cv-02792-JPM-tmp
                                )
STEIN WORLD FURNITURE CO.,      )
                                )
     Defendant.                 )
```

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT**

Before the Court is Defendant Stein World Furniture Co.'s Motion for Summary Judgment (Docket Entry ("D.E.") 16), filed May 18, 2009. Plaintiff instituted this suit pro se, and did not respond to Defendant's motion within the time provided for in the Federal Rules of Civil Procedure. A non-jury trial in this matter was originally set for August 17, 2009, but on July 9, 2009 Defendant filed its Unopposed Motion to Continue Trial. (D.E. 17.) The non-jury trial was re-set for October 26, 2009, with the pre-trial conference set for October 19, 2009. (D.E. 19.) On October 18, 2009 counsel entered an appearance on Plaintiff's behalf (D.E. 23) and filed a response in opposition to Defendant's summary judgment motion (D.E. 24). At the October 19, 2009 pre-trial conference and in a subsequent order the Court continued the trial and granted the parties leave to

1

further brief the issues raised by Defendant's summary judgment motion. (D.E. 29, 31.) Plaintiff filed her supplemental response to Defendant's motion on October 26, 2009. (D.E. 32.) Defendant filed its reply on November 2, 2009. (D.E. 33.) Plaintiff filed her sur-response on November 10, 2009. (D.E. 35.) For the following reasons, the Court GRANTS in part and DENIES in part Defendant's motion for summary judgment.

**I. Background**

This case arises out of Plaintiff's employment as a file clerk at Defendant Stein World Furniture Co. Plaintiff was hired in April 2006 through an employment agency as a temporary employee. (Def.'s Mot. for Summ. J. ("Def.'s Mot.") Ex. 2, Oliver Aff. ¶ 7.) On July 19, 2006 Plaintiff became a "regular" Stein World employee. (Id. ¶ 6.) She was assigned to the accounting department and reported to Mallory Oliver, who was the Accounts Receivable Manager. (Id. ¶¶ 5-6.) Plaintiff's duties generally included organizing and filing accounting and sales paperwork. (Id. ¶ 8.) Occasionally she assisted Darlyn Schell, the receptionist, with mailing invoices to customers. (Id. ¶ 23.)

Plaintiff's father became very ill during her time at Stein World. (Moore Aff. (D.E. 27) ¶ 4.) Plaintiff claims that Stein World management, including Oliver, gave Plaintiff permission to use her cell phone for personal calls relating to her father and

2

"understood" that Plaintiff might be late to or absent from work to assist with her father's care. (Id. ¶¶ 4-5.)

Plaintiff received two written warnings in late 2006. On September 28, 2006 Oliver warned Plaintiff that she had violated Stein World's cell phone policy by making "excessive" personal calls and failing to silence her cell phone ringer after being instructed to do so. (Oliver Aff. ¶ 13.) On November 6, 2006 Plaintiff received a written warning for being late to work the previous day; Plaintiff had called earlier in the day to advise that she would be late but arrived two hours after the arrival time she designated. (Id. ¶¶ 18-19.) Oliver warned Plaintiff that further behavior of that type "could have a serious effect on work performance and could result in termination." (Id. ¶ 19.)

On December 12, 2006 an invoice was mailed from Stein World to Shop NBC, a Stein World customer. (Id. ¶ 24.) Under Stein World policy Shop NBC was not to receive mailed invoices; the mailing of the invoice caused Shop NBC to be double-billed, which according to Oliver "jeopardized" that "very large account." (Id. 25.) Oliver asserts that Plaintiff mailed the improper invoice. (Id. ¶.) Plaintiff's affidavit does not contradict Oliver's assertions, (see generally Moore Aff.), and Plaintiff's deposition testimony merely says that she was not formally trained in sending invoices; she does deny that she had

3

experience assisting with mailing invoices and that she had notice that Shop NBC was not to receive mailed invoices, (see Def.'s Mot. Ex. 3, Moore Dep. 78:1-5, 148-49).

On December 20, 2006 an internal audit showed that Plaintiff had used Stein World's UPS account for personal shipping on December 6 and 8.  (Oliver Aff. ¶ 26.)  Defendant asserts that this was a violation of company policy forbidding misuse of company property and unethical conduct.  (Id.)  Plaintiff does not deny that she used Defendant's UPS account for personal shipping, but argues that receptionist Darlyn Schell "advis[ed] that it was permissible to use the UPS account."  (Moore Aff. ¶ 7.)

There is a dispute as to whether Plaintiff worked unauthorized overtime after being warned that she could not work overtime without a manager's permission.  It is undisputed that prior to November 2006 Plaintiff was allowed to work overtime with the permission of either Oliver or Marie Williams, another supervisor.  (See Supp. Oliver Aff. (D.E. 34) ¶ 4.)  Oliver's affidavit states that Stein World "eliminated" overtime in November 2006, but her affidavit also suggests that employees could still work overtime notwithstanding its "elimination" if they had a manager's approval.  (See id. ¶¶ 5-8.)  Oliver's affidavit does not say that Williams's authority to approve overtime was rescinded.  (See id.)  Plaintiff continued to work

4

overtime after November 2006. (Id. ¶ 8.) On the date of her termination, Oliver confronted Plaintiff about working allegedly unauthorized overtime. (Moore Dep. 149:6-20.) Plaintiff's deposition suggests that she had Williams's permission to work overtime, who at least prior to November 2006 could have given such permission. (See id.) There is at least a factual dispute as to whether Plaintiff had permission to work overtime, contrary to Oliver's assertions.

It is undisputed that Moore fell behind in her filing duties toward the end of her time at Stein World. (See Compl. 5.) Moore suggests that this was because of her father's ill health, but she does not disagree that she was delinquent in her work. (See id.)

Oliver terminated Plaintiff's employment on January 5, 2007. In the termination letter and in her affidavit Oliver gave four reasons for the decision: (1) Plaintiff's personal use of the UPS account; (2) her improper mailing of the invoice to Shop NBC; (3) her deficiency in her filing responsibilities; and (4) her unauthorized use of overtime. (Def.'s Mot., Ex. 3 at 49 ("Termination Letter"); Oliver Aff. ¶¶ 27, 30.)

Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") in January 2007. (See Compl. 8.) The EEOC mailed Plaintiff a right to sue letter on September 19, 2007. (See Compl. 7.) Plaintiff instituted

5

this suit by filing her pro se complaint on December 11, 2007. (D.E. 1.)

## II. Standard of Review

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). So long as the movant has met its initial burden of "demonstrat[ing] the absence of a genuine issue of material fact," Celotex, 477 U.S. at 323, and the nonmoving party is unable to make such a showing, summary judgment is appropriate. Emmons v. McLaughlin, 874 F.2d 351, 353 (6th Cir. 1989). In considering a motion for summary judgment, however, "the evidence as well as all inferences drawn therefrom must be read in a light most favorable to the party opposing the motion." Kochins v. Linden-Alimak, Inc., 799 F.2d 1128, 1133 (6th Cir. 1986); see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

When confronted with a properly supported motion for summary judgment, the nonmoving party "must – by affidavits or as otherwise provided in this rule - set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2);

6

see also Abeita v. TransAm. Mailings, Inc., 159 F.3d 246, 250 (6th Cir. 1998).  However, "'[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient.'"  Street v. J.C. Bradford & Co., Inc., 886 F.2d 1472, 1479 (6th Cir. 1989) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986)).

A genuine issue of material fact exists for trial "if the evidence [presented by the nonmoving party] is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248.  In essence, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  Id. at 251-52.

### III. Analysis

Plaintiff asserts that she was terminated because of her race in violation of Title VII.  Plaintiff brings both a single-motive discrimination claim and a mixed-motive discrimination claim.[1]  (See generally Pl.'s Mem. in Opp'n to Def.'s Mot. for Summ. J.)  These claims are analyzed under different standards at the summary judgment stage.  White v. Baxter Healthcare

---

[1] Defendant argues that Plaintiff does not bring a mixed-motive claim.  The Court rejects this argument.  Plaintiff filed her complaint pro se; she indicated that she was suing for race discrimination under Title VII without limiting her action to single-motive discrimination.  (See Compl. 1-2.)  Her first brief prepared by counsel alleges both single- and mixed-motive discrimination, and Defendant responded in opposition to both claims. Plaintiff properly alleged mixed-motive discrimination under the circumstances of this case and the liberal notice pleading rules.

7

Corp., 533 F.3d 381, 400 (6th Cir. 2008).  The Court will address each claim in turn.

### a. Single-Motive Discrimination

Defendant argues that Plaintiff cannot establish a prima facie case of single-motive discrimination, and that she also cannot show that the legitimate nondiscriminatory reasons offered for her termination are pretextual.  Plaintiff must proceed under the McDonnell Douglas burden-shifting framework because she offers only circumstantial evidence of discrimination.  (See Moore Dep. 167:6-9 (admitting that there is no direct evidence of discrimination)).  Plaintiff bears the burden of showing that: (1) she was a member of a protected class; (2) she suffered an adverse employment action; (3) she was qualified for the position; and that (4) a similarly-situated employee outside her protected class was treated more favorably than she was.  Baxter Healthcare, 533 F.3d at 391 (citations omitted).

Plaintiff has satisfied the first two elements because she is an African-American whose employment was terminated. Defendant first challenges Plaintiff's ability to show that she was qualified for the position.  Defendant argues that Plaintiff was unqualified for essentially the same reasons as Defendant gives for her termination.  This is insufficient as a matter of law.  "[W]hen assessing whether a plaintiff has met her

8

employer's legitimate expectations at the prima facie stage of a termination case, a court must examine plaintiff's evidence independent of the nondiscriminatory reason 'produced' by the defense as its reason for terminating plaintiff." <u>Cline v. Catholic Diocese of Toledo</u>, 206 F.3d 651, 660-61 (6th Cir. 2000)).

Defendant correctly argues however that Plaintiff has failed to identify an appropriate comparator with regard to her termination. "To satisfy the similarly-situated requirement, a plaintiff must demonstrate that the comparable employee is similar 'in all of the *relevant* aspects.'" <u>Martin v. Toledo Cardiology Consultants, Inc.</u>, 548 F.3d 405, 412 (6th Cir. 2008) (quoting <u>Ercegovich v. Goodyear Tire & Rubber Co.</u>, 154 F.3d 344, 352 (6th Cir. 1998). "In the disciplinary context, . . . to be similarly situated, the plaintiff and [her] proposed comparator must have engaged in acts of 'comparable seriousness.'" <u>Wright v. Murray Guard, Inc.</u>, 455 F.3d 702, 710 (6th Cir. 2006) (quoting <u>Clayton v. Meijer, Inc.</u>, 281 F.3d 605, 611 (6th Cir. 2002)).

Plaintiff offers only the conclusory assertions that two white employees were similarly situated to Plaintiff without explaining why that is the case. Plaintiff argues simply that "Mallory Oliver did not discharge Kimberly Sr. [sic] Cin for similar or like alleged infractions, a White female, who, except

9

for race, was otherwise similarly situated to Edna Moore." (Pl.'s Am./Supp. Mem. in Opp'n to Def.'s Mot. for Summ. J. ("Pl.'s Supp. Mem.") 4.)  Plaintiff makes an identical assertion with regard to Darlyn Schell.  (Id. 5.)  These assertions lack any citation to the record, and the Court cannot discern from these statements or the rest of Plaintiff's submissions her argument as to why Ms. St. Cin and Ms. Schell are appropriate comparators.  This is insufficient to carry Plaintiff's burden of showing that similarly situated individuals were treated more favorably.  See Alexander v. CareSource, 576 F.3d 551, 560 (6th Cir. 2009) (conclusory statements that merely restate the requirements of the law are not sufficient to defeat summary judgment).  Plaintiff cannot establish a prima facie case of single-motive discrimination.  See Murray Guard, 455 F.3d at 710.  Her single-motive discrimination claim is DISMISSED.[2]

### b. Mixed-Motive Discrimination

"[A] plaintiff can raise a mixed-motive Title VII claim by 'demonstrat[ing] that race, color, religion, sex, or national origin was *a motivating factor* for any employment practice, even though other factors also motivated the practice.'"  Wright v. Murray Guard, Inc., 455 F.3d 702, 711 (6th Cir. 2006) (quoting 42 U.S.C. § 2000e-2(m)).  Mixed-motive claims are analyzed under

---

[2] The Court will not consider Defendant's asserted legitimate non-discriminatory reasons for the termination or Plaintiff's pretext arguments because Plaintiff has failed to make her prima facie case.

10

the framework established in White v. Baxter Healthcare Corp., 533 F.3d 381 (6th Cir. 2008), rather than under the McDonnell Douglas framework. Baxter Healthcare, 533 F.3d at 400. Under Baxter Healthcare:

> [T]o survive a defendant's motion for summary judgment, a Title VII plaintiff asserting a mixed-motive claim need only produce evidence sufficient to convince a jury that: (1) the defendant took an adverse employment action against the plaintiff; and (2) 'race, color, religion, sex, or national origin was *a* motivating factor' for the defendant's adverse employment action."

Id. (citing 42 U.S.C. § 2000e-2(m)) (emphasis added). "This burden of producing some evidence in support of a mixed-motive claim is not onerous and should preclude sending the case to the jury only where the record is devoid of evidence that could reasonably be construed to support the plaintiff's claim." Id. (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986)).

In support of her mixed-motive claim, Plaintiff largely attacks Defendant's reasons for terminating her and argues that she was treated differently than white employees with regard to cell phone usage. Plaintiff has pointed to several incidents that could support a finding of mixed-motive discrimination.

Construing the facts in the light most favorable to Plaintiff, Plaintiff's deposition testimony suggests that Oliver disciplined Plaintiff for having her cell phone ringer on when

11

it was common practice among the white employees to have their cell phone ringers on. (See Moore Dep. 95-97.) A jury could conclude that this evinces discrimination on Oliver's part.

Plaintiff's deposition testimony also suggests that she had authorization to work overtime, contrary to Oliver's assertions. (See Moore Dep. 149.) At the very least there is a factual dispute as to whether Williams could have and did authorize Plaintiff to work overtime after overtime was "eliminated." (Compare id., with Supp. Oliver Aff. ¶¶ 4-9.) A jury could find that if the overtime justification for Plaintiff's termination was without basis in fact, that baseless justification evinced a discriminatory motive. See St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 510-11 (1993) (disbelief of an employer's proffered reasons may be evidence of discrimination).

Plaintiff has met her burden under Baxter Healthcare of showing that the record is not "devoid" of evidence that could support a finding of discrimination. See Baxter Healthcare, 533 F.3d at 400. There are fact disputes with regard to whether Plaintiff received disparate discipline for her cell phone usage and whether Plaintiff had proper authorization to work overtime, so that that justification for her termination was without basis in fact. Under Baxter Healthcare a reasonable jury could conclude from this evidence that Plaintiff's race played a role

in her termination.  Defendant's motion for summary judgment as to Plaintiff's mixed-motive discrimination claim is DENIED.

## IV. Conclusion

For the foregoing reasons, Defendant's motion for summary judgment is GRANTED in part and DENIED in part.

IT IS SO ORDERED this 15th day of February, 2010.

                                      /s/ Jon P. McCalla_____
                                      JON P. McCALLA
                                      CHIEF U.S. DISTRICT JUDGE